## ROBERT B. KAHRMAN v. PENNSYLVANIA RAILROAD COMPANY.

Argued February 21, 1908—Decided June 8, 1908.

It appears that the plaintiff at best holds title to a *locus in quo* by a deed from one in possession whose possession, if tacked to that of the plaintiff, was less than twenty years; and that defendant holds title by a deed from an owner executed long anterior to the possession of plaintiff's grantor. The verdict for the plaintiff, in an action of ejectment, is set aside.

On rule upon plaintiff to show cause why a new trial should not be granted.

Before Justices REED, PARKER and VOORHEES.

For the plaintiff, *Peter F. Daly* and *George S. Silzer*.

For the defendant, *Alan H. Strong*.

The opinion of the court was delivered by

REED, J. This is an action of ejectment to recover possession of a triangular piece of land—the triangle having a base of one foot nine inches on Albany street, New Brunswick, and running obliquely from the street, back about forty-nine feet, to its apex.

The question of title involves the easterly boundary of the most easterly of the two adjoining lots now owned by Mr. Kahrman, the plaintiff, fronting on Albany street.

In 1809 a tract, including these lots, belonged to James Parker. On March 8th of that year, Gertrude Parker, the executrix of James Parker, conveyed this larger tract to one Richard Manley. The tract so conveyed was described as "beginning on the south side of Albany street, where the old stage road to Princeton intersects the same; thence along Albany street south 82° 30″ west 4.94 links to the beginning corner of an acre lot conveyed to Ralph Ackley by deed dated

September 15th, 1907." This lot, it is perceived, had a front line on Albany street of four chains ninety-four links, or three hundred and twenty-six and four-tenths feet, running from the intersection of the old stage road, sometimes known as French street, its easterly terminus, to the easterly boundary of the Ackley lot, its westerly terminus.

In 1813, Richard Manley, the grantee of all this land, conveyed a portion of it to one Henry Hagerman. The part conveyed was a lot on the extreme west end of the aforesaid tract, and adjoining the Ackley lot.

There is little controversy respecting the easterly boundary of the Ackley lot; the surveyors on both sides agree within a few inches respecting the location of that point upon the south side of Albany street.

The last-mentioned deed to Hagerman calls for the northeast corner of Ackley's lot, and runs east about thirty-two feet along Albany street to a lot belonging to Francis Conover. It is further described as containing thirty-two feet in front and rear. The plaintiff now owns this lot, which will be called lot A. The plaintiff also owns the lot adjoining this lot on the east, which will be called lot B.

The deed from Richard Manley for this lot B is not in evidence; but a deed from some persons named Parsells to one Henry Solomon, made in 1836, appears to have conveyed this lot, and Solomon's title was conveyed to Hagerman in 1842, and from Mary Hagerman to George J. Milleman in 1898, and from Milleman to the plaintiff in 1903.

So the plaintiff owns both lots, and he claims that the easterly lot includes the strip now in dispute. It is claimed for him that each of the two lots mentioned has a frontage of thirty-four feet on Albany street, and it is upon that insistence that it is asserted that the paper-title for the triangular strip now resides in the plaintiff. This results, however, from entirely ignoring the calls for thirty-two feet in the original deed from Richard Manley to Hagerman on April 1st, 1813.

The surveyor for the plaintiff failed to put the boundaries called for in this deed upon his map, because he regarded the description in this deed as "no good."

There is, however, no deed for lot A in evidence save the deed of 1813, which, as already mentioned, distinctly conveys only thirty-two feet on Albany street, and no subsequent · grantee of that lot could convey more, unless he got some other title to the additional land, either by another deed from some other owner, or by adverse possession. Subtracting the thirty-two and thirty-four feet, amounting to sixty-six feet, from the entire frontage of the original lot, namely, three hundred and twenty-six and four-tenths feet, it left the north-easterly corner of the plaintiff's easterly lot a distance of two hundred and sixty and four-tenths feet from the intersection of Albany and French streets, and it is entirely clear that the *locus in quo* is within this two hundred and sixty and four-tenths feet and not within the sixty-six feet.

Indeed, it is admitted by the plaintiff's surveyor, an important witness, that if lot B has only a frontage of thirty-two feet, the easterly line of the easterly lot is withdrawn from the triangular strip. There is nothing to show that the plaintiff ever got the Manley title for more than thirty-two feet, or the Solomon title for more than thirty-four feet, and these titles do not include the *locus in quo*.

But ignoring the original deed of 1813 from Manley, the plaintiff's surveyor relies upon a theory which would make the plaintiff the grantee of a right of possession, which would be good against anyone not possessing a superior right.

It is asserted on behalf of the plaintiff that there was, at the time the defendant began to build a wall in the process of elevating its tracks in New Brunswick, an old fence which marked the easterly boundary of lot B; that this fence ended at a post on Albany street. It is asserted that when the defendant erected its wall it undermined this fence; that after the completion of the work the defendant rebuilt the fence presumably in the line of the other, but the claim is that the new fence was built in upon the property of the plaintiff, as theretofore enclosed, so that on Albany street the new fence was moved westward an appreciable distance. The point of the plaintiff is to establish the position of the old fence post

on Albany street and the line of the old fence southwesterly from the post.

Mr. Tice, the surveyor, says that in 1899 and also in 1901 there was a post and fence corner at a point two hundred and fifty-seven and five-tenths feet from the intersection of French and Albany streets, and this post, he says, marked the end of a fence which defined the easterly line of lot B as then occupied. He says that now the wall of the defendant extends on Albany street one foot nine inches further west than the old point and so includes so much of the land formerly included within lot B as that lot was occupied by the Mille-mans at the time it was sold to the plaintiff.

The plaintiff's right, therefore, would rest upon the view that Milleman, being in possession of lot B up to the fence, conveyed his right of possession to Kahrman, and that there-fore Kahrman's title in an action of ejectment is better than that of a stranger to the title to the *locus in quo*.

There is, however, nothing to show the eastern boundary line of lot B in 1836 other than the deeds already mentioned, which placed the eastern line of that lot sixty-six feet from the Ackley line, which sixty-six feet did not include the *locus in quo*.

Now, lot B was conveyed to Henry Solomon in 1836, and at Albany street it joined the Manley property on the east. The easterly limit of lot B was, as we have seen by the deed, sixty-six feet from the Ackley line, or two hundred and sixty and four-tenths feet from French street. In April, 1838, the New Jersey Railroad and Transportation Company condemned land for a right of way over the Manley land, and the strip so condemned began at the junction of the easterly line of Henry Solomon's lot with the southerly line of Asbury street, and thence along said line south. By this condemnation the westerly side of the railroad property was placed on Albany street, west of the present wall, and so covered a small tri-angle of the *locus in quo* at Albany street. The railroad com-pany also condemned a part of lot B, Solomon's lot, and its right of way ran obliquely across that lot. The description of the part so condemned is this: "Beginning at where the

line between Henry Solomon and the heirs of A. Manley, deceased, joins Albany street," &c. This is also, as is perceived, the beginning point of the preceding condemnation, and in its fourth course runs along the *locus in quo* back to Albany street.

It cannot be disputed that the beginning point, being as the paper-title of Solomon places it, the property condemned includes the *locus in quo.* The fact that the railroad company did not occupy the triangle did not impair its title. The title so given was superior to that of anyone claiming by mere occupation short of twenty years' adverse possession.

The rule to show cause should be made absolute.